UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JASON RYAN McDERMOTT, #62020, | Case No. 1:24-cv-00140-DCN |
| Plaintiff, | **INITIAL REVIEW ORDER BY SCREENING JUDGE** |
| v. | |
| IDAHO DEPARTMENT OF CORRECTIONS, CINDY LEE, DW STEPHEN GRILL, CM MONTE HANSON, and ARNS J. LEMONS, | |
| Defendants. | |

Plaintiff Jason Ryan McDermott, an Idaho Department of Correction (IDOC) inmate housed in an Arizona prison, filed a prisoner civil rights Complaint challenging many aspects of his transfer and out-of-state housing. Dkt. 1. He also filed a "First Amended Complaint" (Dkt. 7) that is intended to supplement the original Complaint, rather than replace it. The Court must review pleadings filed by paupers and prisoners seeking relief against state actors to determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915 & 1915A. Having reviewed these pleadings, the Court enters the following Order requiring amendment if Plaintiff desires to proceed.

## REVIEW OF PLEADINGS

### 1. Standard of Law for Screening

A complaint must contain "a short and plain statement of each claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court liberally construes the pleadings to determine whether a case should be dismissed.

Under Rule 8 and 28 U.S.C. §§ 1915 and 1915A, the Court may dismiss some or all of the claims in a complaint for any of the following reasons:

- "insufficient facts under a cognizable legal" theory, *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984), meaning that the factual assertions, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009);

- "lack of a cognizable legal theory," *Robertson*, 749 F.2d at 534, including that the complaint fails to state a claim upon which relief may be granted, 28 U.S.C. § 1915(e)(2)(B), or the Court applies a procedural bar  sua sponte (on its own), *see, e.g.*, *Hebrard v. Nofziger*, 90 F.4th 1000, 1006 (9th Cir. 2024) (affirming dismissal based on *Heck v. Humphrey*, 512 U.S. 477 (1994));

- frivolousness or maliciousness, 28 U.S.C. § 1915(e)(2)(B); or

- seeking monetary relief from a defendant who is immune from such relief, *id*.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

### 2. Background of Plaintiff's Claims

Plaintiff's claims are as follows:

- First Amendment retaliation claims asserting that Idaho officials transferred Plaintiff to an out-of-state prison in retaliation for his exercise of First Amendment rights.

- Eighth Amendment claims that the Arizona facility is unsafe.

- Eighth Amendment claims that he was ineligible for transfer because of his medical condition of a longstanding traumatic brain injury (TBI).

- Eighth Amendment claims that the Arizona facility is not equipped to treat his medical conditions.

- Eighth Amendment claim that the conditions during the transportation between Idaho and Arizona were cruel and unusual.

- Ex post facto claim related to his transfer to Arizona.

- State sovereignty claim that Plaintiff has to answer to conflicting authorities.

- State law claim based on IDOC officials failing to follow Idaho law.

Plaintiff requests injunctive relief in this case—that the Court compel Idaho prison officials to transfer him back to an Idaho prison. Dkt. 1 at 1, 11. He also requests declaratory relief and desires unspecified "sanctions" against Idaho prison officials. Some of Plaintiff's claims are direct claims for Idaho officials' own actions or inactions, and some of them are derivative claims, arising from alleged ongoing constitutional violations occurring in Arizona that are caused by Arizona officials or staff.

In *Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014), the United States Court of Appeals for the Ninth Circuit held that, where injunctive relief is warranted, prison officials must remedy ongoing constitutional violations of which they are aware, regardless of the cause and regardless of whether they had the current resources to provide the remedy. *Id.*

at 1083 (observing that "[l]ack of resources is not a defense to a claim for prospective relief because prison officials may be compelled to expand the pool of existing resources in order to remedy continuing Eighth Amendment violations."). A pre-requisite to obtaining an injunction is a finding that Plaintiff's current conditions of confinement (whether based on Arizona or Idaho officials' actions or inaction) violate one or more of his constitutional rights and any injunctive relief meets Prison Litigation Reform Act of 1995 (PLRA) limitations:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C.A. § 3626. The type of relief available for each of Plaintiff's particular claims is a question for another day. !

### 3. First Amendment Retaliation and Statute of Limitations Standards of Law

A First Amendment retaliation claim must allege the following: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, ... that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). Although a "chilling effect on First Amendment rights" is enough to state an

injury, *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001), "bare allegations of arbitrary retaliation" are insufficient to state a retaliation claim, *Rizzo v. Dawson*, 778 F.2d 527, 532 n.4 (9th Cir. 1985).

The timing of an official's action can constitute circumstantial evidence of retaliation, but generally there must be something more than simply timing to support an inference of retaliatory intent. *See Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995). Retaliation is not established simply by showing adverse activity by the defendant *after* protected speech; the plaintiff must show a nexus between the two. *See Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (stating that a retaliation claim cannot rest on "the logical fallacy of *post hoc, ergo propter hoc*, literally, 'after this, therefore because of this'").

The statute of limitations period for filing a civil rights lawsuit under 42 U.S.C. § 1983 is determined by the statute of limitations period for personal injuries in the state where the claim arose. *Wilson v. Garcia*, 471 U.S. 261 (1985) (later overruled only as to claims brought under the Securities Exchange Act of 1934, not applicable here). Idaho Code § 5-219 designates a two-year statute of limitations for personal injuries and governs federal civil rights actions brought in Idaho.

### 4.   Retaliation Claims

Plaintiff asserts that, after he filed a civil rights action in 2018, Idaho prison officials retaliated against him by attempting to transfer him to Texas (date unknown). Dkt. 1 at 2-3. Plaintiff asserts he was ineligible for the transfer, but he was transferred anyway. IDOC policy is to exempt prisoners with "medical issues," but prison officials allegedly purposely

lost Plaintiff's medical records so they could transfer him out of state. When he refused to be moved, officials allegedly further retaliated against him by threatening disciplinary action, placing him "on the 'block'—an extra means of punishment" (Dkt. 1 at 3), and transferring him to Arizona successfully on the second attempt, despite an "agreement" between Plaintiff's mother and prison officials that Plaintiff would not be moved from Idaho. *Id*. at 3-4.

Plaintiff alleges that, prior to the transfer to Arizona, whenever he sought medical attention for TBI or seizures or attempted to have staff document his TBI and seizures in his medical records," he was moved from institution to institution. Dkt. 1 at 7. He asserts this action was in retaliation for seeking medical care. *Id*.

It is unclear *when* each of the alleged retaliatory actions took place. Some may be beyond the statute of limitations. For example, Plaintiff states that, between 2018 and 2021, he and his family "fought rigorously to reestablish his medical records." Dkt. 7 at 4.  This time frame suggests that any retaliatory hiding or disposal of his medical records would have occurred prior to 2021, which would render any such claim in this 2024 lawsuit barred by the two-year statute of limitations. Plaintiff will be given leave to state the date each of these incidents occurred.

It is also unclear who was involved in the prior litigation and who took each of the alleged retaliatory actions above. It is unknown how the named Defendants knew of the 2018 litigation and had a stake in it. Plaintiff must state what it is about the 2018 litigation that caused each named Defendant to have a motive to retaliate against Plaintiff by initiating a transfer to Arizona several years later.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 6

Plaintiff asserts that many prisoners volunteered to be transferred to Arizona, but IDOC officials selected Plaintiff and other inmates who did not want to be transferred. There are no allegations showing that the volunteers were actually eligible for transfer, or that officials were retaliating against *all* of the inmates who did not want to be transferred. Without facts supporting this claim, it is implausible that officials transferred *many* inmates who did not volunteer to be transferred *out of a retaliatory motive for each inmate's exercise of a First Amendment right*, or that they transferred many inmates who did not want to be transferred but had a retaliatory motive *only* as to Plaintiff. The vague allegations do not show a causal link between Plaintiff's prior First Amendment activity and prison officials' decision to transfer a whole group of inmates who did not want to be transferred. Simply transferring one or more inmates who do not want to be transferred is not in itself retaliation.

Plaintiff asserts that Defendants told him he was cleared by mental health and medical staff to be transferred, but Plaintiff disagrees that he qualified. When Plaintiff attempted to research the medical issues, Defendant Hanson began intercepting all of his inmate concern forms, instead of routing them to the officials to whom they were addressed. Plaintiff alleges that, when questioned, Defendants went back and forth between saying they did or did not know Plaintiff had TBI. Defendants told Plaintiff all his medical records had been sent to Arizona, but that turned out not to be true.

It is unclear when each of the above alleged retaliatory actions took place, and what First Amendment activity Plaintiff exercised that was the impetus for the retaliation. Plaintiff will be given leave to state the date each of these incidents occurred and show

causation.

In addition, an essential element of a retaliation claim is that the alleged retaliatory action did not reasonably advance a legitimate correctional goal. *Rhodes*, 408 F.3d at 567-68. Some of the acts that Plaintiff complains of are not clearly retaliatory; therefore, Plaintiff must have something more than merely a sequence of events upon which to base his claim. For example, it is more efficient for the prison to route all of the concern forms about the same topic to a single staff member, and, thus, the prison often does this in the regular course of its business. In addition, information about Plaintiff's pre-2005, pre-incarceration traumatic brain injury may be buried under decades of records, causing prison officials to be unaware of it, or to be mistaken about whether they had seen such notations in his records.

Further, important terms such as "medical clearance" or "no medical issues" may have a different meaning to prison medical staff than to Plaintiff. Simply because Plaintiff disagrees with whether he medically qualified for a transfer does not mean that, for retaliatory reasons, medical personnel decided to say he was qualified when he actually was not. Instead, the conclusion of medical eligibility may have been based on legitimate medical screening reasons. A causal connection to a prior exercise of a constitutional right must be sufficiently alleged. Plaintiff will be given leave to clarify the facts supporting all of these retaliation claims in an amended complaint. If he does not have supporting facts for each instance of alleged retaliation, including dates, names of involved personnel, the exercise of a constitutional right prior to the alleged retaliatory act, a causal link between the exercise of the right and the retaliatory act (such as a personal motive), and lack of a

legitimate penological reason for the alleged retaliatory act, he should omit that instance of alleged retaliation.

### 5.   Standard of Law for Eighth Amendment Claims

The Eighth Amendment protects prisoners from cruel and unusual punishment. An Eighth Amendment claim has two components. The first is an objective showing. While conditions of confinement may be harsh and restrictive without violating the Eighth Amendment, they cross the line of acceptability when they (1) involve "the wanton and unnecessary infliction of pain," (2) are "grossly disproportionate to the severity of the crime warranting imprisonment," (3) result "in unquestioned and serious deprivation of basic human needs, or (4) deny an inmate "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

The second component is a subjective showing: that Defendant acted with "deliberate indifference," which is "more than mere negligence," but "less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). To exhibit deliberate indifference, a prison official both "must be aware of facts from which the inference could be drawn" that a substantial risk of serious harm or serious deprivation exists, and the official "must also draw the inference." *Id.* at 837. To satisfy the subjective component, a prisoner must show that a prison official was aware of and recklessly disregarded a serious deprivation or an excessive risk to an inmate's health or safety, which means drawing the inference from the factual circumstances that a serious deprivation or substantial risk of harm exists, and yet ignoring it. *Id.* at 838.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 9

Where Plaintiff is seeking injunctive relief against Idaho officials, he need only show that Arizona officials are acting in a deliberately indifferent way by creating or ignoring a present constitutional violation, that the violation has not been remedied, and that he used the prescribed prison grievance system to notify officials of the constitutional violations before filing his lawsuit. If it was unclear how Plaintiff was to exhaust his administrative remedies as an Idaho prisoner housed in an Arizona facility, that may be grounds to show that any failure to exhaust administrative remedies can be excused.

Where Plaintiff seeks declaratory relief and sanctions against Idaho officials, either derivatively for Arizona staff and officials' actions or inaction, or directly for their own actions or inaction, he must show that Idaho officials were deliberately indifferent, meaning that they drew an inference that the violation was likely to occur, and yet did nothing to prevent it. He will have to show that Idaho prison officials provided and explained an administrative remedy system for him to voice his complaints to them, or that they made such a system unavailable, permitting exemption from the exhaustion of administrative remedies requirement.

### 6. Eighth Amendment Claim: Transferring a Prisoner with a TBI

Plaintiff, who began serving a life sentence in June 2005, asserts that he suffered a TBI before he was incarcerated. He alleges that his longstanding TBI condition exempts him from current out-of-state prison transfers, and the Court should compel Idaho prison officials to transfer him back to an Idaho prison. Dkt. 1 at 1, 11. Plaintiff has presented insufficient facts showing that, objectively, the combination of his TBI and a transfer to an

out-of-state prison caused or could cause him serious harm or injury. Neither has Plaintiff pleaded sufficient facts showing that, subjectively, Idaho prison officials drew an inference from the factual circumstances that a serious deprivation or substantial risk of harm existed by the transfer, and yet ignored the risk.  Plaintiff will be given leave to more clearly state why his long-standing TBI should exempt him from transfers or why it requires extraordinary transfer measures, and what facts show that the Idaho officials drew an inference about a substantial risk of harm.

### 7.  Eighth Amendment Claim: Unsafe Conditions in Arizona Prison

Plaintiff requests entry of an injunction order requiring his return to an Idaho prison because he asserts that the Arizona prison is unsafe. He asserts that Arizona prison staff "are being authorized to bring illegal substances into the facility, which are then transferred to Idaho housing locations" in the Arizona prison. *Id*. at 9; Dkt. 7 at 1-2. Plaintiff has no facts showing that any staff were authorized by any prison officials to bring drugs into the prison. There are no allegations showing that, once this illegal activity was discovered, Arizona officials did nothing to stop it. If Plaintiff has further allegations about the present status of these substance smuggling allegations, he should provide them in an amended complaint.

Plaintiff also asserts that IDOC should not allow Idaho prisoners in a lower custody category to be housed with dangerous maximum security Hawaii prisoners, because of a serious risk of harm. Dkt. 1 at 4. He cites as an example another prisoner, Joseph Davis, who was robbed and beaten by a violent inmate who allegedly used the illegal substance provided by the Arizona officials. Dkt. 1 at 9. There are no allegations showing that the

illegal substance was the impetus for these crimes, and no specific allegations that the perpetrator was a dangerous Hawaii prisoner. However, if there are further facts showing that housing prisoners of different custody levels together causes an undue risk of harm and that Idaho prison officials knew that before permitting Arizona officials to house the inmates together, then Plaintiff should provide those facts.

Plaintiff further alleges that, sometime after the violent inmate assaulted Davis, the violent inmate "was found dead in his cell, with 2 broken wrists, several lacerations to his head and body, and a deep wound in his head – all consistent with someone being cuffed and 'stomped out.'" Dkt. 7 at 2. These allegations, without sufficient causal links, are based on mere speculation that Arizona staff committed the homicide or allowed it to occur, and Idaho officials knew of this substantial risk before the violent inmate's death and yet ignored it. And while these two potentially-related incidents are serious, two incidents do not show that Arizona officials are allowing or causing violence to occur, or that Idaho officials purposely ignored violence statistics among Idaho inmates in the Arizona prison.

Plaintiff asserts that the problems set forth above show that IDOC officials failed to monitor the Arizona out-of-state prison contract appropriately, failed to adequately train Arizona officers, and failed to properly research the Arizona facility before placing Idaho inmates there. Plaintiff further alleges there is an ongoing shortage of staff at the Arizona prison, misappropriation of funds, and mishandling of inmate property. *Id*. These allegations are merely speculative. Again, Plaintiff must provide more specific allegations showing facts and causal connections before he is authorized to proceed on any such claims.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 12

### 8. Eighth Amendment Claim: Arizona Medical Unit's Treatment of Plaintiff's Medical Conditions

Plaintiff asserts that IDOC officials caused him to receive improper medical care as a result of their failure to send Plaintiff's complete set of medical records to Arizona. Plaintiff has provided insufficient facts and a causal link to state a claim.

Plaintiff also asserts that the Arizona prison is not equipped to handle his medical issues, including autism, major allergic reactions to stagnant/stale air that causes his throat to swell shut and stop his breathing, and an extreme sensitivity to odors/aromas and allergens. These allegations are insufficient to establish the objective and subjective elements of an Eighth Amendment claim. Plaintiff need only review his concern forms, medical request forms, and grievances to how Arizona and/or Idaho officials responded to his medical concerns. Plaintiff has not provided any dates when he sought and was unable to receive constitutionally-adequate medical care for any of his conditions. Plaintiff has failed to state a claim upon which relief can be granted with these vague allegations.

### 9. Eighth Amendment Claim: Conditions During Transfer

Plaintiff asserts he was transferred from Idaho to Arizona by bus under "federal transport tactics (i.e. 'black box', 'chain gang', on-board toilet, inmates never leave the bus)." *Id*. at 8. The inmates were kept on the bus for 24 hours, provided food and water on the bus, and given a bathroom break only every 4 to 6 hours. He also alleges that prison officials did not follow other federal transport guidelines, but he does not specify the content of the guidelines or the results of officials failing to following them.

The foregoing allegations fail to state a claim for relief under the Eighth

Amendment, because these conditions are not substantially different from regular society's long-distance driving habits. Except for the infirm or elderly, eating and going to the bathroom every 4 to 6 hours during long-distance travel is normal; travelers maintain these limitations for an efficient trip. Cross-country and international air travel conditions are even more restrictive but do not approach "cruel and unusual punishment."

Plaintiff does not particularly allege that he asked to use the bathroom at other intervals and was refused that opportunity. Neither does Plaintiff allege that he notified prison officials in advance that he needed particular accommodations for his TBI. For example, he alleges that his ride would have been more bearable if he had been provided with "promethazine mcg," which is a low-level narcotic-like medicine generally prescribed for cancer patients to help control extreme nausea and motion sickness. Dkt. 7 at 3. Without prior notice, such as a written request for medical treatment sent before the transportation occurred and a medical provider's or prison official's refusal to review Plaintiff's medical concerns, he cannot meet the essential deliberate indifference element of an Eighth Amendment claim.

### 10. Ex Post Facto Claim

Plaintiff also asserts that, because the Arizona prison was built to house maximum security Hawaii inmates, he was forced to follow the rules and laws of three different states—Arizona, Idaho, and Hawaii. He states that "IDOC has forced immersion [sic] on plaintiff," which violates his Ex Post Facto rights. It is unclear what this means.

The ex post facto provisions of the Constitution forbid enactment of any law that "imposes a punishment for an act which was not punishable at the time it was committed;

or imposes additional punishment to that then prescribed." *Weaver v. Graham*, 450 U.S. 24, 28 (1981) (internal citation and punctuation omitted); U.S. Const., Art. I, § 9, cl. 3; Art. I, § 10, cl. 1. Being transferred to an out-of-state prison does not qualify as "an additional punishment." *See Crow v. Severs*, No. 12-CV-2216 PJS/FLN, 2014 WL 4348226, at *7 (D. Minn. Sept. 2, 2014) (rejecting Minnesota prisoner's claim that his "transfer to [California's] High Desert Prison [with subsequent assault] constitute a violation of his rights under the Ex Post Facto Clause … because neither alleged injury is reflective of a retroactive law or policy that has enhanced [his] original sentence," *citing Collins v. Youngblood*, 497 U.S. 37, 41 (1990)). *Cf. Olim v. Wakinekona*, 461 U.S. 238, 247 (1983) (concluding, in due process context, that "[c]onfinement in another State, unlike confinement in a mental institution, is within the normal limits or range of custody which the conviction has authorized the State to impose") (internal punctuation and citation omitted). It is unlikely Plaintiff can state a claim with these allegations, but he may try amendment if he has additional facts supporting such a claim.

### 11. State Sovereignty Claim

Plaintiff also alleges that his confinement violates Article III, Section 2, Clause 1 of the United States Constitution, which he characterizes as protecting the sovereignty of each state. These allegations are too vague to be actionable. He has not specified which state superseded another's authority in his situation, and how he was injured or is at risk of serious injury. Rather, he has simply stated a bare standard of law.

### 12. State Law Claims

Plaintiff alleges that IDOC officials acted in contravention to an Idaho legislative

provision prohibiting prison officials from contracting with Corrections Corporation of America, now known as Core Civic Inc., which operates the Arizona prison at issue. Dkt. 1 at 2. This is not in itself a claim or a constitutional violation, but an issue of state law or a fact that may be used as evidence of IDOC officials' deliberate indifference.

### 13. Defendant IDOC: Sovereign Immunity

The Eleventh Amendment provides "sovereign immunity" to states and state entities. That means the IDOC, which is a state entity, cannot be sued in federal court except in two instances: (1) where the state of Idaho has expressly waived its sovereign immunity, *see Hans v. Louisiana*, 134 U.S. 1, 16-18 (1890); or (2) where Congress acted under a valid grant of constitutional authority and specifically intended to abrogate state sovereign immunity. *See Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000).

The state of Idaho has not waived sovereign immunity for § 1983 suits in federal court, and Congress has not abrogated state sovereign immunity for such suits. The Eleventh Amendment's jurisdictional bar applies to states and state entities "regardless of the nature of the relief sought." *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Moreover, only a "person" is amenable to suit under 42 U.S.C. § 1983, and a state is not considered a "person" under that statute. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, all claims against the IDOC will be dismissed, and Plaintiff should not include these defendants in any amended pleadings.

### 14. Conclusion

For Plaintiff's claims against Idaho officials for current Arizona prison constitutional violations, Plaintiff has failed to provides facts showing that violations are

ongoing and what officials have done to respond to Plaintiff's efforts to use the administrative grievance system to bring the problems to their attention for resolution without a lawsuit.

For Plaintiff's claims against Idaho officials for their own acts or failures to act (such as failure to train, failure to supervise, failure to research), Plaintiff must provide additional factual allegations. Because Plaintiff is required to exhaust his administrative remedies before filing suit, he should have in his possession specific dates, instances and details, and responses from Idaho prison officials to fill in these details if he chooses to file an amended complaint.

At this time, he has not stated sufficient facts to state a plausible claim against any Idaho official. An alternative may be to sue Arizona officials responsible for the Arizona problems that injured Plaintiff or pose a risk of harming Plaintiff in an Arizona jurisdiction if Plaintiff has exhausted his prison administrative remedies. Transfer back to Idaho is not necessarily the best or only remedy, especially given PLRA limitations on injunctive relief.

Plaintiff will be given leave to amend or voluntarily dismiss this action. For the reasons set forth above, Plaintiff may not proceed on his current pleadings. He may file an amended complaint or a motion for voluntary dismissal. If he files nothing further, the Court will dismiss his case without further notice.

///

///

///

///

INITIAL REVIEW ORDER BY SCREENING JUDGE - 17

## ORDER

**IT IS ORDERED that,** within **30 days** after entry of this Order, Plaintiff must file

an amended complaint, remedying the deficiencies set forth above, if he desires to proceed.

DATED: December 2, 2024

David C. Nye
Chief U.S. District Court Judge